

**SO ORDERED.**

**SIGNED this 5th day of December, 2011.**



_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| RANDY NICHOLAS PAULS, | ) | Case No. 10-13887 |
| RUTH ANN PAULS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION

Timing is everything in bankruptcy. Section 542(a) requires that any "entity" having control of an asset of the bankruptcy estate deliver it or account for its value to the Trustee.[1] Here, Randy Pauls wrote a check to his wife's grandmother several days before debtors filed this case. Though she deposited the check in her bank prepetition, the Pauls' bank did not pay it until the day after they

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code as amended and codified at 11 U.S.C. § 101 *et seq.*

filed their bankruptcy. Because the Pauls remained in control of the funds in their checking account on the petition date, they must deliver them to the Trustee of their bankruptcy estate, or account to the Trustee for their value.[2]

## I. FINDINGS OF FACT

On November 15, 2010 when they filed this case, Randy and Ruth Ann Pauls owed Great Plains Federal Credit Union more than $20,000 collectively on a car loan secured by a 2002 Chevy Venture and a personal unsecured loan. Ruth Ann's grandparents, Ralph and Helen Rosenblad, co-signed both loans. When the Rosenblads learned that the Pauls were contemplating bankruptcy, they wanted to pay part of or both loans because they "didn't want to be involved in the bankruptcy." But rather than pay Great Plains directly, Helen Rosenblad wrote Randy Pauls a check for $11,000 on October 25, 2010.[3]

Randy carried the check to Great Plains on October 30, making a couple of car payments and depositing the remaining $10,105 in his "shares account" *3832.[4] After conferring with his bankruptcy counsel though, Randy withdrew that amount from the shares account a week later and transferred it to his checking account at Great Plains.[5] On November 8, he wrote a check to Helen for $9,531.90.[6] On that same day, Helen wrote a check for $7,546 payable to Great Plains to pay off

---

[2] The Court conducted an evidentiary hearing in this matter on November 15, 2011. The Trustee, Carl B. Davis of Wichita, Kansas, represented the estate and the debtors appeared by their counsel, Ronald L. Leslie of Hutchinson, Kansas.

[3] Ex. A.

[4] Ex. B.

[5] Ex. C and D.

[6] Ex. F. The memo line on the check reads "Paid Back."

-2-

Case 10-13887   Doc# 45   Filed 12/12/11   Page 2 of 6

the signature loan.[7] Then, on Friday, November 12, she deposited Randy's check in her bank, the First National Bank of Hutchinson.[8]

The next Monday, November 15, the Pauls filed this case. Because their November 8 check to Helen had yet to be honored by Great Plains, the $9,531 remained in their checking account. Great Plains honored the check the next day.[9] On November 15 and December 15, Helen paid the monthly car loan payment of $661.17 to Great Plains, and then paid the car loan in full in January of 2011 with a check for $12,788.92.[10]

On February 28, 2011 the Trustee filed a motion to compel turnover of the funds in the Pauls' bank account on the date of filing.[11] That amount is $9,713.49 and included the November 8 check amount of $9,531.90.[12]

## II.  Legal Analysis and Conclusions

**A.  *Property Controlled by the Debtor on the Petition Date Must be Delivered or Accounted For.***

Section 541 broadly defines property of the estate as including all legal or equitable interests of the debtor in property at the petition date. Section 542(a) directs that an entity in possession or control of property of the estate turn it over to the Trustee or account for its value. Here, the question is whether the funds in the Pauls' checking account on November 15, 2010 were their property. The

---

[7] Ex. G.

[8] Ex. F.

[9] Ex. E.

[10] Ex. H, I, and J.

[11] Dkt. 21.

[12] Ex. E.

Pauls contend that since the source of the funds was Mrs. Rosenblad and that she loaned them the money to pay debts to Great Plains that she had guarantied, the funds were not the Pauls' property on the petition date. Kansas law and bankruptcy law suggest otherwise.

While the determination of whether a transfer has occurred for bankruptcy purposes is a matter of federal law, courts look to state law to determine the respective property interests in the transferred property.[13] As this Court has previously held, the appropriate state law here is Article 3 of the Uniform Commercial Code as adopted by Kansas. KAN. STAT. ANN. § 84–3–408 (1996) states that a check does not of itself operate as an assignment of funds in the hands of the drawee [bank] and that the drawee is not liable on the instrument until the drawee accepts it.[14] The Kansas Comment to § 84-3-408 speaks to the situation here—where the bankruptcy trustee asserts the funds are property of the estate:

> Similarly, the drawer's trustee in bankruptcy may claim the account as an asset of the estate if the petition in bankruptcy is filed after the check was drawn but before final payment . . . As another variation on the bankruptcy theme, this section probably means that a "transfer" of funds in the account to the payee for voidable preference purposes occurs upon final payment by the drawee bank, not upon execution of the check.[15]

The 10th Circuit Bankruptcy Appellate Panel faced a very similar set of facts in *In re Ruiz*, where it noted that the debtor had the ability to "withdraw all funds in their account, to close the account, to stop payment on any outstanding checks, and to transfer the funds from the account to

---

[13] *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (" ... Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

[14] *See In re Spencer*, 362 B.R. 489, 490-91 (Bankr. D. Kan. 2006).

[15] KAN. STAT. ANN. § 84-3-408 (1996), Kansas Comment, 1996.

another account."[16] The Panel concluded that this amounted to "control during the case" within the meaning of § 542(a).

### B. *The Pauls' Control of the Funds at Filing Requires the Pauls to Turn Them Over.*

While it may be that Helen Rosenblad loaned Randy Pauls the funds that were ultimately represented by the $9,531 check, Pauls did not hold those funds for her in any representative capacity. He owned the money and could use it in any manner. Even though he had written her a check to "return" the money, that check had not yet been honored by his bank and the funds remained in his control. He therefore had, and has, a duty to account for them under § 542.

That the Pauls no longer have the money is not a defense to turnover. As the BAP held in *Ruiz*, current possession of estate property is not a required element of turnover because § 542(a)'s express reference to recovery of either the property of its value contemplates the possibility that a debtor has had and subsequently lost control of estate assets. To hold otherwise would be to say that anyone in possession of estate property could evade the duty to deliver it to the trustee by transferring it to someone else.[17] In short, the Pauls' control over the funds on the date of filing is sufficient control "during the case" to subject them to turnover.

### III. Conclusion and Decree

The facts in this case are lamentable: an elderly grandmother's attempt to assist her granddaughter and husband by co-signing and paying their debts results in the debtors being liable for funds they have repaid to her and that she, in turn, has paid to their creditor. But unfortunate facts

---

[16] 455 B.R. 745, 750 (10th Cir. BAP 2011).

[17] *See In re Diversified Products, Inc.*, 100 F.3d 53, 56 (7th Cir. 1996).

-5-

Case 10-13887    Doc# 45    Filed 12/12/11    Page 5 of 6

do not soften the outcome that the law coldly compels.[18] Randy and Ruth Ann Pauls had control of the $9,713.49 in their checking account on the date of their bankruptcy petition and must be ordered to account to the Trustee for it as § 542(a) requires.

The Trustee's motion for turnover is GRANTED and the debtors are ORDERED to turn over to the Trustee $9,713.49.

# # #

---

[18] As further noted by the *Ruiz* Panel, the Pauls could have avoided this unfavorable result by merely waiting until all outstanding checks had cleared the bank before filing their petition. *Ruiz*, *supra* at 753.